Benjamin **BURNHAM, Jr.,** Defendant Below, Appellant,

v.

**STATE of Delaware,** Plaintiff Below, Appellee.

No. 422, 1999.

Supreme Court of Delaware.

Submitted: July 25, 2000.
Decided: Oct. 16, 2000.

---

Bernard J. O'Donnell, Office of the Public Defender, Wilmington, Delaware, for Appellant.

Elizabeth R. McFarlan, Department of Justice, Wilmington, Delaware, for Appellee.

Before VEASEY, Chief Justice, WALSH and BERGER, Justices.

BERGER, Justice.

In this appeal, we consider whether the Superior Court erred in refusing to instruct the jury that harassment is a lesser included offense of the crime of stalking. The State objected to the instruction on the ground that stalking is a "course of conduct" crime, but that harassment is not. We disagree. Harassment includes, among other things, a "course of alarming or distressing conduct ..." and/or "repeated" phone calls. In this case there was evidence to support an acquittal on the stalking charge and a conviction on the lesser offense of harassment. Since the jury was not properly instructed and we are unable to conclude that the error was harmless, the conviction must be reversed.

1. 11 Del. C. § 206(c).

## I. Factual and Procedural Background

Benjamin Burnham, Jr. had a romantic relationship with Anne Holloway for nine years. In 1992, Holloway broke off the relationship and Burnham moved out of her home. Burnham attempted to rekindle the relationship by calling and sending Holloway gifts. Holloway rejected Burnham's overtures and, in 1994, Holloway filed a complaint with the police charging Burnham with aggravated harassment. Burnham was tried and acquitted. After the trial, he continued to contact Holloway. He called Holloway at home and at work; contacted her family; delivered letters and gifts to her home; followed her in his car; and peered through a fence to watch her in her yard. Holloway acknowledged that Burnham never threatened her, but she testified that his attentions were frightening. In order to protect against Burnham's intrusive behavior, Holloway purchased a handgun, changed the locks on her doors, and installed air conditioning so that she could keep her windows shut at all times.

Based on this conduct, Burnham was charged with one count of stalking. The jury was instructed on the crimes of stalking and aggravated harassment. Burnham asked the court to instruct the jury on the crime of harassment, as well, but the court refused. After three days of deliberations, the jury found Burnham guilty of aggravated harassment.

## II. Discussion

A defendant in a criminal case is entitled to have the jury instructed on lesser included offenses if "there is a rational basis in the evidence for a verdict acquitting the defendant of the offense charged and convicting the defendant of the included offense." [1] The three offenses at issue are stalking, aggravated harassment and harassment:

§ 1312A. Stalking; class F felony.

(a) Any person who intentionally engages in a course of conduct directed at

a specific person which would cause a reasonable person to fear physical injury to him or herself, . . . and whose conduct induces such fear in such person is guilty of the crime of stalking.

§ 1312. Aggravated harassment; class G felony.

(a) A person is guilty of aggravated harassment when he or she repeatedly follows or contacts another person . . . knowing that he or she is thereby likely to cause a substantial disruption of the regular activities of the other person.

§ 1311. Harassment; class B misdemeanor.

(a) A person is guilty of harassment when, with intent to harass, annoy or alarm another person:

(1) He or she insults, taunts or challenges another person or engages in any other course of alarming or distressing conduct in a manner which the person knows is likely to provoke a violent or disorderly response;

* * *

(5) Makes repeated or anonymous telephone calls to another person whether or not conversation ensues, knowing he or she is thereby likely to cause annoyance or alarm.

Holloway testified that Burnham made numerous telephone calls; left gifts at her home; followed her in his car; and spied on her in her home and backyard. She also testified that Burnham's conduct scared her and led her to buy a gun, among other things. This evidence could support a guilty verdict on the charge of stalking, if the jury were to conclude that Burnham's conduct would cause a reasonable person to fear personal injury; or aggravated harassment, if the jury were to conclude that Burnham knew it was likely his conduct would substantially disrupt Holloway's regular activities. The question is whether the jury could view this same evidence as being insufficient to convict on either of the first two crimes, but sufficient to convict Burnham of "simple" harassment.

The State argued to the trial court that harassment is a "single act" crime and, therefore, is not a lesser included offense of aggravated harassment and stalking, which are "course of conduct" crimes. On appeal, the State acknowledges that harassment can be a course of conduct crime, but it argues that a harassment instruction was unwarranted under the facts. According to the State, there was no evidence that Burnham taunted Holloway, insulted her, or engaged in a "course of alarming or distressing conduct . . . likely to produce a violent or disorderly response."

As to the other basis for a harassment conviction—repeated telephone calls—the State says, in effect, there was too much evidence. Burnham did not just call Holloway repeatedly; he contacted her family and friends, wrote to her, came to her house, and followed her in his car. According to the State, there was no rational basis on which the jury could find that Burnham made repeated phone calls but did not do the other things Holloway described. The same is true, the State says, with respect to levels of culpability. Harassment requires a finding that Burnham acted with intent to harass, annoy or alarm. Aggravated harassment requires a finding that Burnham knew his conduct was likely to cause a substantial disruption of Holloway's regular activities. Since Burnham knew that Holloway filed a criminal complaint against him in 1994, and built a fence around her property to keep him from spying on her, the State argues that he had to know he was causing a substantial disruption of Holloway's regular activities.

From our review of the record, we are satisfied that the evidence could support a guilty verdict on the charge of harassment rather than aggravated harassment.[2] Burnham's state of mind was the critical element in this case. He knew that his overtures were unwelcome, but Burnham's conduct was not so aggressive or overbear-

2. See: *Ward v. State*, Del.Supr., 575 A.2d 1156, 1159 (1990).

ing that the jury was required to conclude that he also knew that he was disrupting Holloway's life. Holloway's responses—putting up a fence and pressing charges against Burnham—were as consistent with a finding that she was annoyed as with a finding that her regular activities were disrupted. Accordingly, the jury had a rational basis on which to conclude that Burnham was guilty of harassment, but not aggravated harassment.

### III. Conclusion

The failure to instruct a jury on a lesser included offense is not *per se* reversible error.[3] In this case, however, the jury acquitted Burnham on the stalking charge and might have acquitted on the aggravated harassment charge, as well, had it been instructed on harassment. Since we are unable to conclude that the error was harmless, Burnham's conviction must be reversed.

3. *Lilly v. State,* Del.Supr., 649 A.2d 1055, 1062 (1994).